UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MINGZHI GAO,<br><br>                    Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center, et al.,<br><br>                    Respondents. | Case No.: 25-cv-2084-RSH-SBC<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Mingzhi Gao seeks habeas relief from this Court pursuant to 28 U.S.C. § 2241. As set forth below, the Court grants the petition.

**I.   BACKGROUND**

On August 13, 2025, Petitioner initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Petitioner, a citizen of the People's Republic of China, is detained by U.S. Customs and Immigration Enforcement ("ICE") at the Otay Mesa Detention Center in San Diego, California. *Id.* ¶¶ 3, 4. Petitioner names as respondents the warden of the detention center, the Acting Director of ICE's San Diego Field Office for Enforcement and Removal Operations, the Acting Director of ICE, the

Secretary of the U.S. Department of Homeland Security ("DHS"), and the Attorney General of the United States. *Id.* ¶¶ 5-8.

Petitioner alleges that on November 24, 2024, after previously being paroled into the United States, Petitioner unintentionally—misdirected by his GPS—crossed the border into Mexico; upon applying for reentry into the United States, he was detained and then transferred into ICE custody. *Id.* ¶¶ 14-17. On December 13, 2024, an asylum officer interviewed Petitioner and determined that he had a credible fear of persecution in China. *Id.* ¶ 18. On December 16, 2024, Petitioner was issued a Notice to Appear, charging him with being a removable alien. *Id.* ¶ 19.

On December 31, 2024, an immigration judge ruled that she did not have jurisdiction to set bond for Petitioner because he was an arriving alien. *Id.* ¶ 18.

On June 18, 2025, Petitioner appeared for an individual hearing before an immigration judge, who (1) found Petitioner removable, (2) denied Petitioner's request for asylum, but (3) granted Petitioner's request for withholding of removal to China pursuant to 8 U.S.C. § 1231. *Id.* ¶ 22. Petitioner has appealed the denial of asylum, and his appeal remains pending. ¶¶ 24-25.

Petitioner has twice requested parole from ICE, on December 31, 2024 and on August 8, 2025. *Id.* ¶¶ 21, 30. He has not received a parole determination.

Petitioner asserts that his detention violates the due process clause of the Fifth Amendment. Respondents have filed a response to the Petition, and contend that there is no due process violation, but have not contested any of the foregoing facts. ECF No. 6.

On September 3, 2025, the Court held a hearing on the Petition. ECF No. 9. The Court invited supplemental briefing from both sides, which they have filed. *See* ECF Nos. 10, 11. Petitioner has remained in ICE custody since his arrest on November 24, 2024.

## II.    LEGAL STANDARD

Title 28 of the U.S. Code, Section 2241, provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). A prisoner bears the

burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). *See also Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner ….").

### III. ANALYSIS

#### 1. Jurisdiction

Respondents first challenge this Court's jurisdiction to hear a 2241 petition, relying on 8 U.S.C. § 1252(g). That provision states that, except as otherwise provided in Section 1252, and notwithstanding any other provision of law including 8 U.S.C. § 2241, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The government argues that because Petitioner challenges his detention during removal proceedings, that detention "arises from" the Attorney General's decision to commence such proceedings; and therefore his challenge must be brought instead through 8 U.S.C. § 1252(b)(9). ECF No. 6 at 5-6 & n.4. That provision, in turn, states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9). In this habeas action, Petitioner is not seeking "judicial review of a final order." Additionally, Section 1252(a)(5) provides that a petition for review filed with an appropriate court of appeals is "the sole and exclusive means for judicial review of an order of removal."

The Supreme Court has interpreted the jurisdiction-stripping provision in Section 1252(g) provisions narrowly, limiting it to "three discrete actions": the "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g)). The Supreme Court noted that "[t]here are of course many other decisions or actions that

may be part of the deportation process." *Id.* In a later decision, the Court explained that it did not interpret Section 1252(g) "to sweep in any claim that can technically be said to "arise from" the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).

Here, Petitioner is seeking to review the legality of his detention, arguing that the length of time he has been detained here violates due process—rather than challenging the decision to commence proceedings, the adjudication of his removal case, or an action to execute his removal order. He does not seek to relitigate in this Court the Immigration Judge's order of removal; indeed, he is separately pursuing an appeal with the Board of Immigration Appeals. The sole relief he seeks here is release from custody. Respondents have not cited any authority in which a court was found to lack subject matter jurisdiction over such a habeas claim. The Court concludes that Petitioner's claim is not barred by Section 1252(g).

**2.     Merits**

The Parties agree that, as a matter of statutory law, Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1). The relevant provision states that in the case of an arriving alien seeking asylum, "[i]f the officer determines at the time of the interview that an alien has a credible fear or persecution … the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii).[1] Although

---

[1]    Section 1225(b)(1)(B)(ii), applicable to arriving aliens seeking asylum and found to have a credible fear of persecution, is one of the mandatory detention regimes contained in the Immigration and Nationality Act. Other mandatory detention rules include those in Section 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."), Section 1225(b)(2)(A) ("[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall

Petitioner's application for asylum has now been denied by an immigration judge, because Petitioner has appealed his order of removal it is not administratively final and he remains subject to Section 1225(b)(1)(B)(ii). The sole issue presented is whether, in the circumstances of this case and at this point in time, applying this mandatory detention regime violates Petitioner's due process rights.

Respondents argue that under the Supreme Court's decision in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), Petitioner as an "arriving alien" has no due process rights beyond those that Congress has provided. ECF No. 6 at 9. In *Thuraissigiam*, the Supreme Court rejected a habeas petitioner's argument that the due process clause conferred rights to challenge his order of expedited removal beyond those established by Congress, stating that "an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." 591 U.S. at 107. The petitioner in that case had "attempted to enter the country illegally and was apprehended just 25 yards from the border." *Id.* The Supreme Court determined that the "political department of the government" had plenary authority to admit or exclude aliens seeking initial entry, and thus "an alien in respondent's position has only those rights regarding admission that Congress has provided by statute." *Id.* at 139-40. Respondents argue that because Petitioner is an "arriving alien,"—based on his temporary departure from the United States followed by his application for reentry—due process provides him nothing beyond the mandatory detention scheme established by Section 1225(b)(1).

Following the Supreme Court's decision in *Thuraissigiam*, some district courts have adopted Respondents' reasoning to dismiss or deny habeas petitions in the context of arriving aliens subject to mandatory detention under Section 1225(b)(1). *See Petgrave v. Aleman*, 529 F. Supp. 3d 665, 669 (S.D. Tex. 2021) ("As far as Petitioner is concerned,

---

be detained for a proceeding under section 1229a of this title."), Section 1226(c) (entitled "Detention of criminal aliens"), and Section 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien.").

whatever procedure Congress has authorized is sufficient due process."); *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329, 336 (W.D.N.Y. 2021) ("Petitioner is on the threshold of initial entry into the United States and [] he accordingly is not entitled to procedural protections beyond those provided by statute.").

Most courts have ruled otherwise. *See Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 25-cv-98-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b) …. 'essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'") (citing *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019)); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."). This Court agrees with the majority position that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing. This Court likewise agrees with those district courts that interpret *Thuraissigiam* as circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [Thuraissigiam] did the Supreme Court suggest that arriving aliens being held under § 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever."); *Hernandez v. Wofford*, No. 25-cv-986-KES-CDB (HC), 2025 WL 2420390, at *3 (E.D. Cal. Aug. 21, 2025) ("Although the Supreme Court has described Congress's power over the 'policies and rules for exclusion of aliens' as 'plenary,' and held that this court must generally 'defer to Executive and Legislative Branch decisionmaking in that area,' it is well-established that the Due Process Clause stands as a significant constraint on the manner in which the

political branches may exercise their plenary authority'—through detention or otherwise.") (citations omitted); *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1171–72 (W.D. Wash. 2023) ("The holding in *Thuraissigiam* does not foreclose Plaintiffs' due process claims which seek to vindicate a right to a bond hearing with certain procedural protections.").

Petitioner offers, as a framework for analyzing a due process challenge to prolonged detention, a six-factor balancing test used by some district courts, that considers: (1) the total length of detention to date; (2) the likely duration of future detention; (3) conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal. *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019) (citing *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019); *accord Kydyrali*, 499 F. Supp. 3d at 773. Respondents contend that this test is inapplicable, because *Thuraissigiam* leaves no due process rights for arriving aliens beyond those rights provided by statute; but Respondents argue in the alternative that the six-factor test weighs in Respondents' favor. ECF No. 6 at 9.

As to the first of these factors, which has been described as "the most important factor," *Banda*, 385 F. Supp. 3d at 118, Petitioner has been detained for just over 10 months. The Court is unaware of any case authority indicating that a 10-month period of immigration detention, in and of itself, requires a bond hearing as a matter of due process. The Court considers the other five factors identified above, as well as additional factors relevant to Petitioner's case, alongside the length of detention.

In Respondents' favor, there is no indication that the government is responsible for undue delay in the removal proceedings; Petitioner received a merits hearing before an immigration judge less than seven months after his arrest. At that hearing, Petitioner was ordered removed, ECF No. 6 Ex. 4, although that order is non-final as a result of Petitioner's pending appeal.

Other factors favor Petitioner. Petitioner faces an undetermined, but likely significant, period of mandatory detention through the appeals process. Although he has

1  chosen to appeal the denial of asylum, as is his right, there is no indication that he is
2  responsible for undue delay in the proceedings. His conditions of confinement at Otay
3  Mesa Detention Center are not dissimilar to criminal confinement, although Petitioner does
4  not seek to raise standalone constitutional challenges to those conditions.

5        The Court finds that the most relevant factors here, apart from the length of custody
6  to date, fall outside the six-factor test. The Court notes that Petitioner was previously
7  granted parole under 8 U.S.C. § 1182(d)(5). ECF No. 1 at 4. That provision allows DHS to
8  exercise discretion to parole an alien into the United States "on a case-by-case basis for
9  urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5). As far
10 as the Court can tell, Petitioner's parole was terminated not for any change in the
11 underlying circumstances, but automatically as a result of Petitioner having crossed the
12 border into Mexico. Although Petitioner has since made two requests for parole, in
13 December 2024 and in August 2025, there is no evidence that he has received any response
14 or determination on those requests. At the hearing, Respondent's counsel did not provide
15 any explanation for this lack of response. Asked whether the government had any particular
16 interest in Petitioner's continued detention, Respondent's counsel referred to the
17 government's general interest in the enforcement of immigration laws. The fact that
18 Petitioner was previously granted parole, the fact that his renewed requests for parole have
19 not received responses, and the lack of any specific governmental interest underlying his
20 continued detention all weigh in favor of Petitioner.

21       Additionally, Petitioner has been granted relief by an immigration judge, in the form
22 of withholding of removal to China. Although this relief does not vouchsafe Petitioner's
23 continued presence in the United States, it suggests that his asylum claim—whether or not
24 his appeal will ultimately be successful—is not wholly without merit. The granting of
25 withholding of removal also means that, even if Petitioner were to withdraw his appeal and
26 his order of removal became final immediately, Petitioner would not be immediately
27 removable to his country of origin. Petitioner indicates that he has been requesting travel
28 documents from third countries, to no avail. Petitioner's circumstances suggest that even

if he were not appealing the denial of asylum, he would face delays in removal through no fault of his own.[2]

The Court finds that Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process. *See A.L.*, 761 F. Supp. 3d at 826 (granting petition where petitioner was an arriving alien who had been held in custody pursuant to Section 1225(b) without a bond hearing for almost 10 months, had been granted withholding of removal, and was pursuing an appeal of the denial of asylum).

Petitioner is entitled to a prompt and individualized bond hearing, at which Respondents must justify his continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018) (explaining that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond"); *see also Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing for a noncitizen detained under § 1226(c)).

//
//
//
//

---

[2] If Petitioner were to *dismiss* his asylum appeal, it appears he would no longer be subject to mandatory detention under Section 1225(b)(1)(B)(ii), but would instead be subject to Section 1231(a), and if not removed within a 90-day period of mandatory detention would be statutorily eligible for supervision in lieu of detention. *See* 8 U.S.C. §§ 1231(a)(2)(A), (a)(3).

## IV.  CONCLUSION

For the foregoing reasons, the Petition is **GRANTED**. Respondents are directed to arrange an individualized bond hearing for Petitioner before an immigration court within ***fourteen (14) days*** of this order as described above. All other relief sought in the Petition, including an order directing Petitioner's immediate release, is denied.

**IT IS SO ORDERED.**

Dated: September 26, 2025

_____
Hon. Robert S. Huie
United States District Judge